CRC/KOH: USAO 2019R00339

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * CRIMINAL NO. GJH 22CR185 |
| | * |
| JOHANAH NAPOLEON, | * (Wire Fraud, 18 U.S.C. § 1343; Aiding |
| | * and Abetting, 18 U.S.C. § 2; |
| Defendant | * Forfeiture, 18 U.S.C. § 981(a)(1)(C), |
| | * 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c)) |
| | * |

*******

## INFORMATION

### COUNT ONE
(Wire Fraud)

The United States Attorney for the District of Maryland charges that:

At all times relevant to this Information:

### Introduction

1. State Boards of Nursing were established to protect the public's health by overseeing and assuring the safe practice of nursing. Boards of Nursing achieve this mission by establishing the standards for safe nursing care and issuing licenses authorizing the practice of nursing. Once a license was issued, the Boards of Nursing held licensees to provisions defined in state laws and, when necessary, acted against the licenses of those nurses who have exhibited unsafe nursing practice.

2. The purpose of a professional license was to protect the public from harm by setting minimal qualifications and competencies for safe entry-level practitioners. Nursing was regulated because it is one of the health professions that poses a risk of harm to the public if practiced by someone who is unprepared and/or incompetent.

3. Typical components of licensure to be a Registered Nurse ("RN") or a Licensed Practical Nurse ("LPN") included, among other things, verification of graduation from an approved pre-licensure nursing program, verification of successful completion of the National Council Licensure Examination ("NCLEX"), a criminal background check, and in some states—including New York—continuing education credits.

4. Once a nursing license was obtained in one jurisdiction, various state reciprocity agreements simplified the process to obtain a license and practice in another state.

### The Defendant and Relevant Entities and Individuals

5. Palm Beach School of Nursing, LLC ("Palm Beach School of Nursing") was a limited liability company incorporated under the laws of the State of Florida on or about April 11, 2016, with its principal address located in Lake Worth, Florida. Palm Beach School of Nursing was licensed by the Florida Board of Nursing as a nursing education program on or about June 22, 2012. Palm Beach School of Nursing's license was terminated on or about May 2, 2017, due to the low passage rate of its graduates.

6. The defendant, **JOHANAH NAPOLEON ("NAPOLEON")**, was a resident of West Palm Beach County, Florida, and the President of Palm Beach School of Nursing.

7. Nursing School 1 was incorporated under the laws of the State of Virginia on or about July 2007. Nursing School 1 was licensed by the Virginia Board of Nursing in or around July 2008. In or around June 2013, Nursing School 1's license was terminated by the Virginia Board of Nursing due to the low passage rates of its graduates.

8. Company 1 was a limited liability company incorporated under the laws of the District of Columbia on or about August 3, 2011.

2

9.      **Patrick Nwaokwu** ("**Nwaokwu**"), a resident of Maryland, was an instructor at Nursing School 1 in Virginia and the owner of Company 1. **Nwaokwu** was the signatory on multiple bank accounts, including an account at Bank 1 in the name of Company 1 ending in -0980 ("Bank 1-0980"). Bank 1-0980 was opened in or around November 2014, with a mailing address in Washington, DC. In or around May 2019, **Nwaokwu** changed the address on Bank 1-0980 to an address in Laurel, Maryland.

10.     **Geralda Adrien** ("**Adrien**") was a resident of Broward County, Florida. **Adrien** was the signatory on several bank accounts, including an account at Bank 1 in **Adrien**'s name ending in -3677 ("Bank 1-3677").

11.     The New York State Education Department ("NYSED") was the department of the New York state government responsible for all applications and licensure of medical professionals, including RNs and LPNs.

## The Scheme to Defraud

12.     In or around 2018, **NAPOLEON** and her co-conspirators, including **Nwaokwu** and **Adrien**, devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises—including by, among other things, selling fraudulent nursing diplomas, educational transcripts and other credentials, and assisting the purchasers in fraudulently obtaining licensure and ultimately employment in the healthcare field—all with the intent to defraud and with knowledge of the scheme's fraudulent nature (the "scheme to defraud").

3

## Manner and Means of the Scheme to Defraud

It was part of the scheme to defraud that:

13. Beginning in or around 2018, **NAPOLEON**, **Nwaokwu**, and **Adrien** sold false and fraudulent diplomas and educational transcripts which falsely represented that the purchasers of the documents had completed the necessary courses and/or clinical training to obtain nursing degrees when, in fact, the purchasers had never completed the necessary courses and/or clinical training.

14. **Nwaokwu**, who resided in Maryland, targeted prospective purchasers and told them that he could help them obtain nursing degrees and licenses. **Nwaokwu** stated that he was affiliated with Palm Beach School of Nursing, which he explained was a nursing school in Florida, and purchasers would receive degrees from Palm Beach School of Nursing. **Nwaokwu** generally charged $17,000 for RN degrees and $10,000 for LPN degrees.

15. As part of the scheme, **Nwaokwu** directed purchasers to complete certain forms, including an application for Palm Beach School of Nursing. **Nwaokwu** instructed purchasers not to complete the dates on the application forms because the dates would be added in Florida and back-dated to make it appear as though the student had been part of a previous graduating class—a class that graduated in or before December 2019, which was the date of the last graduating class of the Palm Beach School of Nursing.

16. In addition, **Nwaokwu** directed purchasers to complete applications for licensure to be submitted to the NYSED, which asked for information about the applicant and the applicant's nursing education and degree(s). **Nwaokwu** instructed purchasers to list Palm Beach School of Nursing and to leave the dates of graduation blank, as the dates would be added in Florida.

17.     **Nwaokwu** then mailed and caused others to mail these false and fraudulent application forms and documents to **NAPOLEON** and **Adrien** in Florida, including by sending them using the United States Postal Service.

18.     **NAPOLEON**, **Adrien**, and others then added false and incorrect dates to these fraudulent application forms. **NAPOLEON**, **Adrien**, and others also created false and fraudulent diplomas and educational transcripts, all of which falsely represented that the purchasers of the documents had completed the necessary courses and/or clinical training to obtain nursing degrees (collectively, the "false and fraudulent documents").

19.     **NAPOLEON**, **Adrien**, and others then mailed and caused others to mail, by United States Postal Service, the false and fraudulent documents back to **Nwaokwu** to be provided to the purchasers. **NAPOLEON**, **Adrien**, and others also mailed and caused others to mail, by United States Postal Service, the false and fraudulent documents to the purchasers and to state licensing agencies, including the NYSED, on behalf of the purchasers.

20.     Using the false and fraudulent documents, including continuing education certifications, **NAPOLEON**, **Adrien**, **Nwaokwu**, and others assisted the purchasers of the false and fraudulent documents to obtain fraudulent nursing licenses from state licensing agencies, and ultimately employment in the healthcare field.

21.     In furtherance of the scheme, **Nwaokwu** caused purchasers to submit payment for the false and fraudulent documents via cash, check, or electronic wire transfer.

22.     **Nwaokwu** used a portion of the purchaser's funds to pay **Adrian** and **NAPOLEON** for providing false and fraudulent documents in furtherance of the scheme. Specifically, **Nwaokwu** (a) wired and caused others to wire money to **Adrien** via interstate electronic funds transfer; and (b) mailed and caused others to mail, by the United States Postal

Service, checks to **Adrien**. Nwaokwu provided these funds to **Adrien** as payment for **Adrien** and **NAPOLEON** providing false and fraudulent documents from Palm Beach School of Nursing.

23. **Adrien** and **NAPOLEON** agreed that **Adrien** would accept funds from Nwaokwu on behalf of both **NAPOLEON** and **Adrien**. After receiving the fraudulently obtained proceeds from **Nwaokwu,** Adrien shared these funds with **NAPOLEON**, often by providing **NAPOLEON** with cash.

24. **NAPOLEON**, **Adrien**, **Nwaokwu**, and others used the proceeds of the fraud for their personal use and benefit, and to further the fraud.

### The Charge

25. On or about January 28, 2020, in the District of Maryland and elsewhere, the defendant,

**JOHANAH NAPOLEON,**

for the purpose of executing and attempting to execute the scheme to defraud, did knowingly transmit and cause to be transmitted by means of wire communication, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds—to wit, on or about January 28, 2020, **NAPOLEON** caused to be transmitted an interstate wire transfer of approximately $5,000 from Nwaokwu in Maryland, using Bank 1-0980, to **Adrien** in Florida, using Bank 1-3677.

18 U.S.C. § 1343
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c) in the event of the defendant's conviction under Count One of this Information.

### Wire Fraud Forfeiture

2. Upon conviction of the offense alleged in Count One of this Information, the defendant,

**JOHANAH NAPOLEON,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

### Substitute Assets

3. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

18 U.S.C. § 981(a)(1)(c)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Date: May 17, 2022

Erek L. Barron /KOM
Erek L. Barron
United States Attorney